Margaret T. AUSTIN et al., Appellants,

v.

Louie WELCH et al., Appellees.

No. 642.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

April 26, 1972.

Rehearing Denied May 17, 1972.

Ray A. Bass, III, Haynes & Fullenweider, Houston, for appellants.

William A. Olson, City Atty., Joseph G. Rollins, Sr., Asst. City Atty., City of Houston, Joe Resweber, County Atty., Billy E. Lee, Asst. County Atty., Harris County, Houston, for appellees.

TUNKS, Chief Justice.

On November 20, 1971, in a general election held in the City of Houston, Texas, Lee McLemore was reelected to the office of City Councilman, District C. The term for which McLemore was so elected was a two year term to begin on January 2, 1972. On December 20, 1971, McLemore delivered to the city a letter not only resigning

from the office for the then current term, but also reciting that he would not qualify for the following term, to begin January 2, to which he had just been reelected. The office remained vacant for the remainder of the term. On January 2, 1972, Mc-Lemore failed to accept the office for the new term. On the following day the other members of the City Council appointed James J. McConn to serve as Councilman, District C, for the term ending January 1, 1974.

This suit was filed by twenty eight individuals who designate themselves as residents and qualified voters of the City of Houston. They allege that they sue as individuals and as a class representing all qualified voters of the City of Houston. The plaintiffs named as defendants, in their official capacities, the Mayor and all members of the City Council of Houston except McConn, whom they named in person. They also named as defendants, in their official capacities, the members of the Commissioners' Court of Harris County, Texas. The plaintiffs alleged that the city ordinance and state statute that provide for filling a vacancy on the city council, under the conditions that existed in this case, by appointment by the remaining members of the council are unconstitutional. For such reason the plaintiffs alleged that the appointment of McConn was void. They prayed that the court issue a writ of mandamus requiring the city council to call a special election to fill the vacancy occasioned by McLemore's failure to accept the office on January 2, 1972. Alternatively, they prayed that the court issue a writ of mandamus requiring the Commissioners' Court of Harris County to call such an election. They also prayed that McConn be enjoined from further performing the duties of the office in question.

The case was tried in the district court without a jury. The controlling facts were stipulated and are recited in the trial court's judgment. The transcript does not reflect that any additional findings of fact were requested or filed. No statement of facts was filed in this Court. The trial judge denied the relief sought by the plaintiffs and they have appealed.

■ Article VII, Sec. 2 of the Houston City Charter reads, in part, as follows:

"Vacancies in the city council, where the same do not exceed three at any one time, shall be filled by a majority vote of the remaining members of the council, and the persons elected to fill such vacancies shall serve only until the next general city election, when such vacancies shall be filled as in ·the case of an original election."

That is the provision which the plaintiffs, in the trial court, alleged to be void because it is in conflict with Article 6, Section 3 of the Texas Constitution, Vernon's Ann.St., which reads, in part, as follows:

"All qualified electors of the State, as herein described, who shall have resided for six months immediately preceding an election, within the limits of any city or corporate town, shall have the right to vote for Mayor and all other elective officers; . . . ."

That constitutional provision has a rather peculiar distinction in that it has been construed differently by the Texas Supreme Court from the way that it has been construed by the Texas Court of Criminal Appeals. In 1901 the Texas Legislature enacted a statute establishing a charter for the City of Galveston, Texas. Such charter was framed to solve special problems that had arisen as a result of the 1900 hurricane that almost destroyed Galveston. It included some unusual provisions including a provision that the city commission should consist of five members, including a mayor and two commissioners to be appointed by the Governor. Such a commission was so established and it enacted a sanitary ordinance providing for a fine as punishment for its violation. Charles Lewis was convicted of violating that ordinance. The va-

lidity of such conviction was presented to the Texas Court of Criminal Appeals in Ex Parte Lewis, 45 Tex.Cr.R. 1, 73 S.W. 811 (1903). The Court held that the conviction was invalid because the ordinance was not enacted by any validly established city commission. The city commission was held not to be validly established because the legislative provisions for the appointment by the Governor of three of its members was held to be contrary to Article 6, Section 3 of the Texas Constitution.

In Brown v. City of Galveston, 97 Tex. 1, 75 S.W. 488 (1903) the question of the validity of the establishment of Galveston's city commission was presented to the Texas Supreme Court. There the plaintiffs sued the city to enjoin the collection of certain license fees and taxes. The Supreme Court declined to follow the Court of Criminal Appeals' holding in Ex Parte Lewis and, instead, held that the Galveston City Commission was validly established. This constituted a holding that a statutory provision enacted by the Legislature for the appointment, rather than election, of members of a city commission is not in violation of Article 6, Section 3 of the Texas Constitution. Houston is a home rule city. Its charter was adopted by its qualified voters. It logically follows that if the Legislature's delegation to the Governor of the power to appoint city commissioners did not violate Article 6, Section 3 of the Constitution, then Houston's voters' delegation to the City Council of limited power in that respect is not such a violation.

In City of Austin v. Thompson, 147 Tex. 639, 219 S.W.2d 57 (1949) the Court had under consideration a section of the Austin, Texas city charter which provided that vacancies on the city council (except those created by recall) should be filled by appointment by the remaining members of the council. Although that case was decided on questions not involved in this case, it is clear that the Supreme Court treated the charter provision not only as valid, but also as preventing the filling of the vacancy by special election.

The appellants' points of error by which they contend that Article VII, Sec. 2 of the Houston City Charter violates Article 6, Sec. 3 of the Texas Constitution are overruled.

■ The appellants also contend that the charter provision here in question and the appointment of McConn pursuant to its terms violate the equal protection clause of the 14th Amendment of the Constitution of the United States. In support of this contention appellants cite Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) and a number of other of the "one person, one vote" cases by the Supreme Court of the United States. Those cases hold that disproportionate distribution of the electorate into legislative districts violates such constitutional provision. It is argued by the appellants that the charter provision places in the remaining city councilmen the right to select another member of the council, which right belongs to the entire electorate of the City of Houston.

In Fortson v. Morris, 385 U.S. 231, 87 S.Ct. 446, 17 L.Ed.2d 330 (1966) the Court upheld the validity of a section of the Constitution of the State of Georgia which provided that, in a gubernatorial election, if no one got a majority of the votes, the governor should be elected by a Georgia General Assembly from the two persons having the highest number of votes. A three judge federal district court had enjoined the State Assembly from electing a governor under that provision on the ground that it denied the Georgia voters equal protection of the laws, in violation of the Fourteenth Amendment. In reversing the trial court the Supreme Court, at 87 S.Ct. 448, said, "Not a word in the Court's opinion (The reference is to the opinion in Gray v. Sanders, 372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963)), indicated that it was intended to compel a State to elect its governors or any other state officers or agents through elections of the people rather than through selections by appoint-

ment or elections by the State Assembly."
(Parenthesis added)

The appellants argue that the Fortson case is distinguishable on the basis of the fact that the election of the governor by the assembly was limited to the two persons getting the highest number of votes, thus giving the voters some voice in electing the governor. The language of the opinion does not permit such distinction. In fact, the basis upon which the appellants would distinguish the case as supporting the validity of the Georgia constitutional provision is, apparently, the very basis upon which the dissenting judges would have held it invalid.

In Wallis v. Blue, 263 F.Supp. 965, at page 969 (N.D.Ga.1967) the court said:

"There is no federal requirement intended to compel a state to elect any of its officers or agents through popular vote of the people. Fortson v. Morris. . . . So long as the method is chosen by the people, and the method does not constitute an unreasonable delegation of power, it is sufficient."

Article VII, Sec. 2 of the Houston City Charter does not violate the equal protection provision of the Fourteenth Amendment of the Constitution of the United States.

In view of the holding that the charter provision is valid it is unnecessary to consider the effect of Vernon's Tex.Rev.Civ. Stat.Ann. art. 1175c (1945). That statute provides that the governing body of a home rule city with a population of 384,000 or more shall fill by appointment a vacancy in an elective office of such city, where its charter does not provide for the filling of such vacancy.

■ Tex.Rev.Civ.Stat.Ann. art. 990 (1875) provides that the Commissioners'

Court of the county in which a city is located shall, upon petition of 26 voters of such city, order a special election to fill a vacancy in a city office if the city's charter does not provide for the filling of such vacancy. On the basis of that statute the plaintiffs alternatively asked that the trial court issue a writ of mandamus directing the Harris County Commissioners' Court to call an election to fill the vacancy created by McLemore's failure to accept office. There are several reasons why this alternative relief was properly denied. In the first place art. 990 is not applicable to a home rule city. See the commentary of the Honorable Truman O'Quinn, Volume 2A, Vernon's Civil Statutes of the State of Texas, Annotated, Page XII, at Page XXIX. In the second place, the trial court's judgment recites that no petition, as required by the statute, was filed with the Commissioners' Court. A writ could not properly be issued to compel the Commissioners' Court to call the election unless there was pleading and proof that such court, upon proper petition, had refused to do so. Kemp v. Wilkinson, 113 Tex. 491, 259 S.W. 912 (1924).

■ There is a further reason why the alternative writs of mandamus as well as the injunction sought by plaintiffs properly were denied. The office in question is not vacant. It is occupied by McConn. None of the plaintiffs assert a claim to that office. Their pleadings do not show any of them even to be qualified to fill it. Under the circumstances the exclusive method available to these plaintiffs to challenge McConn's right to the office is a quo warranto proceeding. Williams v. Castleman, 112 Tex. 193, 247 S.W. 263 (1922); Bean v. Town of Vidor, 440 S.W.2d 676 (Tex. Civ.App.-Beaumont 1969, writ ref'd n. r. e.).

The judgment of the trial court is affirmed.